John H. Gomez (SBN 171485)
John P. Fiske (SBN 249256)
Stephanie S. Poli (SBN 286239)
GOMEZ TRIAL ATTORNEYS
655 West Broadway Suite 1700
San Diego, CA 92101
Telephone: (619) 237-3490
Fax: (619) 237-3496

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| Katelin Pruitt and Lalaine Ortega, individually and on behalf of all others similarly situated,<br><br>PLAINTIFF,<br><br>v.<br><br>THE WET SEAL, INCORPORATED,<br><br>DEFENDANT. | CASE NO._____<br><br>CLASS ACTION COMPLAINT FOR VIOLATION OF THE "WARN" ACT<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Katelin Pruitt and Lorlaine Ortega ("Plaintiffs") on behalf of themselves and all similarly situated persons, alleges as follows:

## PRELIMINARY STATEMENT

1. This case arises out of the abrupt and sudden announcement by The Wet Seal, Incorporated ("Wet Seal" or "Defendant") to close a large majority of its retail stores (the "Closed Stores"). On January 7, 2015, Wet Seal closed 338 of its

retail stores without advance warning to its employees, immediately leaving approximately 3,695 workers unemployed. This action is brought as a result of Wet Seal's failure to provide its workers with the notification required under the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101, *et seq.* (the "WARN Act"), and to recover appropriate relief to remedy this violation.

2. Through this action, Plaintiffs and other similarly situated former employees of Defendant seek damages in the amount of sixty (60) days pay and benefits, by reason of Defendant's violation of their rights under the WARN Act. Plaintiffs and Class Members were employees of Wet Seal and were terminated as part of a mass layoff and/or plant closing ordered by Defendant. Wet Seal violated federal law by failing to give Plaintiffs and other similarly situated employees of Wet Seal sixty (60) days notice as required by such laws.

**THE PARTIES**

3. Katelin Pruitt is a former Wet Seal employee who worked at the North Carolina store that is among those subject to the closure announced on or around January 7, 2015. Plaintiff has been injured as a result of Wet Seal's conduct as alleged herein.

4. Lalaine Ortega is a former Wet Seal employee who worked at the Georgia store that is among those subject to the closure announced on or around January 7, 2015. Plaintiff has been injured as a result of Wet Seal's conduct as alleged herein.

5. Defendant, The Wet Seal, Incorporated, (hereinafter "Wet Seal") is a Delaware entity headquartered at 26972 Burbank, Foothill Ranch, California. It issues securities that are publicly traded on the NASDAQ exchange under the ticker symbol "WTSL."

///

///

## JURISDICTION AND VENUE

6. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this case is being brought under the WARN Act, 29 U.S.C. § 2101 *et seq.*

7. Venue is proper in this District because Defendant resides in this District, the Wet Seal headquarters are located in this District, and a substantial part of the events giving rise to Plaintiffs's claims occurred in this District.

## FACTUAL BACKGROUND

### A.  The Rise and Fall of Wet Seal.

8. Defendant Wet Seal is a retailer that sells clothing to young women in malls nationwide. The company was founded in 1962 as a "bikini shack" in Newport Beach, California by Lorne Huycke as "Lorne's."[1] The company was incorporated as Wet Seal in 1990, after Huycke decided on the name change based on a comment made at a bathing suit fashion show.

9. Wet Seal operated three mall-based chains of retail stores under Arden B, Blink, and Wet Seal brands. Wet Seal acquired 237 Contempto Casuals from The Neiman Marcus Group in 1995, and had converted most 237 Contempto Casuals stores into Arden B stores by 1998 and others into Wet Seal stores by 2001. The remaining 237 Contempto Casual stores were converted into Blink stores in 2010. In 2014, Wet Seal announced it would be closing all of its Arden B stores by 2015.

10. Wet Seal claims that each of its stores is an average of 4,000 square feet. In 2014, there were 532 store locations, comprised of 478 Wet Seal stores

---

[1] Tracie Rozhon, *The Teenage Crush on Wet Seal Stores is so Over,* THE NEW YORK TIMES (September 3, 2004), http://www.nytimes.com/2004/09/03/business/03wet.html?_r=0.

and 54 Arden B stores, with 7,413 full and part-time employees. The majority of the stores are located in California.

11.  Wet Seal has been struggling for years. In April 2014, Wet Seal's stock was priced at approximately $3.00 per share, compared to its current $0.11 per share. While its peak was around the late 1990s and early 2000s, Wet Seal stock lost nearly 97% of its value in 2014, and about $150 million in the past two years. 2014 was the third year in a row that the company reported an annual financial loss, with a drop from $27.4 million in profits in 2013 to 14.3 million in profits in 2014. In December, the company reported that it might have to file for Bankruptcy protection, and soon after entered into a forbearance agreement with its creditor, Hudson Bay Master Fund Ltd., which gives Wet Seal until January 12 to make a payment. Another clear sign of financial loss was when Wet Seal announced the closure of all Arden B stores by 2015.

12.  One reason behind Wet Seal's extreme financial losses and eventual store closures is the failure to adhere to a consistent theme of clothing, as well as aggressive competition from other similar, more popular retailers such as H&M and Forever 21. Another major reason for Wet Seal's closings is maybe its multiple replacements of the CEO. The CEO has been replaced three times since 2011, and the article quotes, "it's no wonder the company has struggled to find its voice." [2]  Finally, an overall decline in profits of other teen apparel retailers can be contributed to Wet Seal's decline.

13.  Despite strong evidence that Wet Seal was in steep decline, it continued to keep its employees uninformed right up until they abruptly fired 3,695 of their employees. As discussed in part B, employees were told not to look for other jobs and that the stores were simply remodeling.

---

[2] Mallory Schlossberg, *5 Reasons Why Teen Retailer Wet Seal is Failing,* BUSINESS INSIDER (December 23, 2014), http://www.businessinsider.com/5-reasons-for-wet-seals-downfall-2014-12.

**B. The Store Closings on January 7, 2014.**

14. On or around January 7, 2015, the Wet Seal issued a press release announcing the immediate closure of 388 retail stores.[3] According to the press release, the Wet Seal decided to go forward with the store closures "after assessing its overall financial condition and the Company's inability to successfully negotiate meaningful concessions from its landlords."[4]

15. The press release acknowledged that the store closures resulted in in the termination "of approximately 3,695 full and part-time employees."[5]

16. While laying off a substantial amount of its work force, Wet Seal itself did not declare for Bankruptcy protection or cease its operations. To the contrary, the press release states that it "expects to [continue to] operate approximately 173 retail stores and its Internet business."[6] The closed stores "represented approximately 48 percent of its net sales for the nine months ending on November 1, 2014."[7] Wet Seal expects to continue to operate 173 retail stores.[8] It has been reported that it is keeping stores open that are located on the West Coast.

17. Unsurprisingly, recently laid off workers at some Wet Seal stores were unhappy about being blindsided. Some workers responded to the company's actions by posting signs describing the way they were treated, such as the one that appears below:

---

[3] http://files.shareholder.com/downloads/WTSLA/3811330367x0x801810/F3837E19-8201-4AB8-957C-BC40A00121AB/WTSL_News_2015_1_7_General_Releases.pdf (last visited Jan. 8, 2015).
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*



18.     Another similar posting by recently terminated employees at a different store appears below:

[Photograph of a yellow banner posted in a Wet Seal store window next to a red "SALE ENTIRE STORE 70% off" sign. The banner reads:

#ForgetWetSeal  Make our voices heard!!!
#BoycottWetSeal

☑ Unused vacation & sick time unpaid (19 weeks blocked out... impossible to get approval anyways!)

☑ One days notice to find new jobs
 ★ Store Manager - 8 years with company
 ★ Assistant Manager - 7 years with company
 ★ Assistant Manager - 4 years with company, mother of 2, student
 ★ 2 associates - 4+ years with company
 ★ 2 associates - 3+ years with company, student
 ★ newest hire - 4 weeks & missing paycheck

☑ No transfers to open stores - can apply & interview if interested

☑ "Financial Hardship" but CFO receives $95,000 raise (5 year employee received first raise this year from minimum wage of 16¢)

☑ Celebrate Success? This location #1 YTD in district

☑ Thank you to our loyal (and hopefully former) customers!
#508 FAB08]

19.     One article quotes a terminated employee named Kaitie Rosiu saying that she received ""Zero notice," … "It's upsetting, it's depressing. No one deserves to be jobless like that instantly."[9]

20.     Another article reproduced an image of a "Confidential" store closure discussion script to be used by Assistant Store Managers in advising employees that they would be abruptly terminated:[10]

---

[9] http://www.businessinsider.com/wet-seal-workers-tell-their-story-2015-1 (last visited Jan. 8, 2015).

[10] http://www.buzzfeed.com/sapna/one-days-notice-wet-seal-under-fire-for-surprise-

> **Confidential – Not to be copied or reproduced.**
> **Destroy after conversation has been conducted.**
> Script for SM – Assistant Manager Store Closure Discussions
>
> **INTRODUCTION:**
> As you all know, the Company has been struggling financially. We've tried cutting costs everywhere we can, but it has not been enough.
>
> At this time, I have to advise you of a decision that will affect you. The company has made the decision to close the store due to a number of business reasons. As a result, we will be closing our store on January 6, 2015 and vacating the store January 8, 2015.
>
> I need to let you know that your position has been impacted by these changes and is being eliminated. You will be eligible for a Retention Bonus if you meet the operational requirements for closing the store.
>
> I recognize that this news is not easy to hear and the company and I want to thank you for your dedication and commitment to our customers and the business, shown each and every day. We appreciate the hard work and contributions that you made to the business. None of this is reflective of the work we've done or based on your performance. The decision to close our store is based on the overall state of the business.
>
> Now I'd like to share with you the business closure plan in order to operate the business effectively between now and the closing date.
>
> **BUSINESS OPERATIONAL PLAN:**
> Operational Guidelines:
> As I communicated, the anticipated closure date for our store is January 6, 2015. We will need you to continue working for a few days past the date of store closure in order to execute the final operational steps.

21. This same article claims that store managers and assistant managers were instructed to dial into a 2:30 p.m. conference call on Friday, [presumably January 3, 2015], without any knowledge of what the call would be about. District managers were then apparently told to deliver the news, and store personnel were left to inform associates they no longer had jobs.

**C.  Wet Seal's Violation of the WARN Act.**

22. Plaintiffs and those she seeks to represent herein were discharged without cause on their part on or about January 7, 2015, as the reasonably foreseeable consequence of the mass layoff or plant closing ordered by Wet Seal, and are "affected employees" within the meaning in 29 U.S.C. §210l(a)(5).

23. The Closed Stores constitute a single site of employment within the meaning of the WARN Act because, *inter alia,* they all took uniform instructions from the same corporate Wet Seal headquarters, all held the same sales during the

---

layoffs#.qlQOEBVQD (last visited Jan. 8, 2015).

same times and sold merchandise at or around the same prices. A person buying a product at one of the Closed Stores was free to return it to that or any other Wet Seal store.

24. Plaintiffs brings this action on her own behalf, pursuant to the WARN Act, and on behalf of all other similarly situated employees and former employees whose employment was terminated on or about January 7, 2015.

25. Wet Seal terminated Plaintiffs's employment as part of a mass layoff or plant closing as defined by 29 U.S.C. § 2101, for which Plaintiffs was entitled to receive sixty (60) days advance written notice under the WARN Act.

26. Wet Seal, as a single employer, did not give Plaintiffs the statutorily required sixty (60) days notice of the mass layoff or termination in violation of the WARN Act.

27. Plaintiffs and Class members were discharged by Wet Seal without cause on their part, and are "affected employee(s)" within the meaning of the WARN Act 29 U.S.C. § 2101(a)(5).

28. Upon information and belief, Defendant Wet Seal maintains a vacation policy that applies to all of its employees. Through that vacation policy, Plaintiffs and other employees accrued vacation as they worked for Defendant Wet Seal.

29. Upon information and belief, Defendant Wet Seal failed and refused to pay all employees, including Plaintiffs, for their accrued and unused vacation at the time of employment termination.

30. Plaintiffs also seeks to recover any other accrued benefits to which she and Class members are entitled as a result of Defendant's conduct, including without limitation, any health insurance benefits and/or any retirement or 401(k) benefits.

///

# CLASS ACTION ALLEGATIONS

31. Plaintiffs sues under Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Proposed Class:

> All persons employed at Wet Seal's Closed Stores who were involuntarily terminated as a result of the layoffs announced on or around January 7, 2014, without the advanced notice required by the WARN Act.

32. Numerosity: The Proposed Class is so numerous that joinder of all members is impracticable. According to Wet Seal's press release, 3,695 employees were terminated.

33. Typicality: The Plaintiffs's claims are typical of the members of the Proposed Class. Plaintiffs, and proposed class members, were all involuntarily terminated by Wet Seal without proper notice under the WARN Act.

34. Superiority: A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

35. Adequacy: Plaintiffs and her counsel will fairly and adequately protect the interests of the Class. Counsel for Plaintiffs have extensive experience successfully representing Plaintiffss in complex class action litigation across the country.

36. Commonality: Common questions of law and fact exist to all members of the Proposed Class and predominate over any questions solely affecting individual members of the Proposed Class, including but not limited to whether:

    a. Defendant was a covered employer under the WARN Act;

    b. all class members were protected under the WARN Act;

    c. all class members' employment locations were covered facilities under the WARN Act;

    d. Defendant failed to provide at least sixty (60) days advance written notice to the class members, as required by the WARN Act;

      e.      Defendant failed to pay the class members wages and to provide other employee benefits for the 60-day period following their respective terminations; and

      f.      Defendant failed to pay or compensate class members for their accrued vacation time.

37. This case is maintainable as a class action under FED. R. CIV. P. 23(b)(1) because prosecution of actions by or against individual members of the Proposed Class may result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Wet Seal.

38. This case is maintainable as a class action under FED. R. CIV. P. 23(b)(2) because Wet Seal has acted on grounds that apply generally to the Class, such that final injunctive relief or corresponding declaratory relief is appropriate as to the entire Class.

39. Class certification is also appropriate under FED. R. CIV. P. 23(b)(3) because questions of law and fact common to the Proposed Class predominate over any questions affecting only individual members of the Proposed Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. In addition, class certification is superior because it will avoid the need for unduly duplicative litigation that might result in inconsistent judgments about Wet Seal's practices.

40. Further, class action treatment of this action is authorized and appropriate under the WARN Act, 29 U.S.C. § 2104(a)(5), which clearly provides that a Plaintiff seeking to enforce liabilities under that statute may sue either on behalf of his or her self, for other persons similarly situated, or both.

///
///
///
///

# CLAIM FOR RELIEF
## VIOLATION OF THE WARN ACT

41. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

42. At all times material herein, Plaintiffs, and similarly situated persons, have been entitled to the rights, protections, and benefits provided under the WARN Act, 29 U.S.C. § 2101 *et. seq*. Plaintiffs and members of the Class are "affected employees" of Wet Seal within the meaning of 29 U.S.C. §2101(a)(5).

43. Wet Seal is and was an "employer" as that term is defined in 29 U.S.C. § 210l(a)(l) and 20 C.F.R. § 639.3(a). Wet Seal employed more than 100 employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States.

44. On or about January 7, 2015, Wet Seal ordered a "mass layoff" or "plant closing" of the Closed Stores, as those terms are defined in 29 U.S.C. § 2101(a)(2),(3).

45. Plaintiffs are informed and believes and thereon alleges that the mass layoff or plant closing at the Facilities resulted in "employment losses," as that term is defined by 29 U.S.C. § 210l(a)(2) for at least 50 of Wet Seal's employees as well as 33% of Wet Seal's workforce at each of the Facilities, excluding part-time employees as that term is defined by 29 U.S.C. § 210l(a)(8).

46. Plaintiffs and each of the other members of the Class were discharged by Wet Seal without cause on their part.

47. Wet Seal failed to give Plaintiffs and other members of the Class written notice that complied with the requirements of the WARN Act.

48. Plaintiffs and each of the other Class members are "aggrieved employees" of Wet Seal, as that term is defined in 29 U.S.C. §2104(a)(7).

49. Wet Seal failed to pay Plaintiffs and each of the Class members their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued

vacation pay for 60 days following notice of their terminations and failed to pay accrued retirement benefits, for 60 days following notice of their respective terminations.  Plaintiffs has been injured as a result of these WARN Act violations.

50. Wet Seal is also liable to Plaintiffs for reasonable attorneys' fees under 29 U.S.C. § 2104.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and all members of the Class, request the following relief:

A. That the Court determine that this action may be maintained as a class action under Federal Rule of Civil Procedure 23;

B. That Wet Seal is found to have violated the provisions of the WARN Act as to Plaintiffs and the WARN Class;

C. For an award, of damages or in equity, in the amount of unpaid compensation, vacation and other benefits owed Plaintiffs and Class Members.

D. An award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 2104, and/or other applicable law; and

E. For such other and further relief, in law or equity, as this Court may deem appropriate and just.

///
///
///
///
///
///
///
///
///

# DEMAND FOR JURY TRIAL

Plaintiffs hereby requests trial by jury of all issues triable by jury pursuant to FED. R. CIV. P. 38.

Dated: January 15, 2015          Respectfully submitted,

By:    /s/ John P. Fiske

John H. Gomez, Esq.
John P. Fiske, Esq.
Stephanie S. Poli
**GOMEZ TRIAL ATTORNEYS**
655 West Broadway Suite 1700
San Diego, CA 92101
Telephone: (619) 237-3490
Fax: (619) 237-3496

Joseph G. Sauder (To Apply *Pro Hac Vice*)
Matthew D. Schelkopf (To Apply *Pro Hac Vice*)
Benjamin F. Johns (To Apply *Pro Hac Vice*)
Joseph B. Kenney (To Apply *Pro Hac Vice*)
**CHIMICLES & TIKELLIS LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Tel: (610) 642-8500
Fax: (610) 649-3633
jgs@chimicles.com
mds@chimicles.com
bfj@chimicles.com
jbk@chimicles.com

Richard A. Maniskas, Esquire (To Apply *Pro Hac Vice*)
**RYAN & MANISKAS, LLP**
995 Old Eagle School Rd., Ste. 311
Wayne, PA 19087
Tel: 484-588-5516
Fax: 484-450-2582
rmaniskas@rmclasslaw.com